**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Frank William COLON, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 20, 2011.

Filed Oct. 28, 2011.

William Braught, Lancaster, for appellant.

James E. Zamkotowicz, Assistant District Attorney, York, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BENDER, and PANELLA, JJ.

OPINION BY STEVENS, P.J.:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of York County following Appellant's conviction by a jury on the charges of possession with the intent to deliver a controlled substance, possession of a con-

trolled substance, and possession of drug paraphernalia.[1] Appellant contends (1) the suppression court erred in denying Appellant's motion to suppress and (2) the trial judge's questioning of the sole defense witness was prejudicial and partisan, thus requiring reversal. We affirm.

The relevant facts and procedural history are as follows: Appellant was arrested and, on March 9, 2010, he filed a counseled pre-trial motion seeking to suppress, *inter alia*, physical evidence, which was seized by the police. On September 29, 2010, the lower court held a suppression hearing, at which Parole Agent Scott Lapp, who has been a parole officer for ten years, was the sole testifying witness. Specifically, Agent Lapp testified that he began supervising Appellant, who was on parole, in October or November of 2008. N.T. 9/29/10 at 4. Agent Lapp indicated that Appellant was not working regularly and, therefore, Agent Lapp told him to go to the Career Link to find a job. N.T. 9/29/10 at 6. One evening, Agent Lapp saw Appellant driving his vehicle around a bar in an area that was known for drug activity. N.T. 9/29/10 at 6. Agent Lapp observed as Appellant picked up an individual in front of the bar, drove around the area for a few blocks, returned to the same location in front of the bar, and dropped off the individual. N.T. 9/29/10 at 6. Agent Lapp pulled his vehicle alongside Appellant's vehicle, told Appellant what he had just observed, and informed Appellant that what he just did was "illegal." N.T. 9/29/10 at 6. Agent Lapp told Appellant that he could call the Columbia Police Department and have Appellant's vehicle searched; however, Agent Lapp decided to give Appellant "one last opportunity to knock it off." N.T. 9/29/10 at 6.

Subsequently, when Agent Lapp was at the Columbia Police Department, an offi-

cer informed him that he believed Appellant was living in the Cool Creek area, which was not the location of Appellant's approved residence. N.T. 9/29/10 at 7. Agent Lapp took a photograph of Appellant to the Cool Creek Apartments and showed it to the manager, who recognized Appellant. N.T. 9/29/10 at 7. The manager confirmed that Appellant was staying at the apartments with Amy Bachman. N.T. 9/29/10 at 7. Agent Lapp returned to his office and discovered that Amy Bachman was on parole supervision by the York office for drug possession. N.T. 9/29/10 at 7. Agent Lapp contacted Ms. Bachman's supervising parole agent, who informed Agent Lapp that Appellant's vehicle was always parked outside of Ms. Bachman's apartment when he conducted morning home visits and Appellant would leave when the agent arrived for the home visit. N.T. 9/29/10 at 8. Agent Lapp testified that he never saw Appellant at his approved residence and, when he called, Appellant was always somewhere else. N.T. 9/29/10 at 16.

Agent Lapp, along with parole agents from Lancaster and York, including Ms. Bachman's supervising parole agent, conducted a search of Ms. Bachman's apartment at 8:00 a.m. on May 1, 2009, which, Agent Lapp testified, was a few weeks after Agent Lapp had observed Appellant's activities outside of the bar. N.T. 9/29/10 at 5, 8–9. Upon arrival into Ms. Bachman's apartment, Agent Lapp saw Appellant standing at the top of the steps with his car keys in his hands. N.T. 9/29/10 at 9. Appellant was handcuffed, Agent Lapp removed the car keys from Appellant's hands, and Agent Lapp searched Appellant's pockets, discovering a scale, a large amount of money, and a couple of cell phones. N.T. 9/29/10 at 9,

---

1. 35 P.S. §§ 780–113(A)(30), (16), and (32),     respectively.

14. Appellant indicated he used the scale to weigh food. N.T. 9/29/10 at 15. Agent Lapp and another parole agent then searched Appellant's vehicle, which was parked outside of Ms. Bachman's apartment. N.T. 9/29/10 at 10. Therein, they discovered numerous envelopes, which bore Appellant's name, and a jacket, out of which "popped . . . an envelope and it had suspected drugs in it along with his driver's license." N.T. 9/29/10 at 10. At this point, Agent Lapp telephoned the local police, who took custody of the contraband and filed charges against Appellant. N.T. 9/29/10 at 10.

On cross-examination, Agent Lapp testified that, when he was assigned Appellant's parole case from a retiring agent, Appellant's file contained anonymous complaints regarding drug activity. N.T. 9/29/10 at 11. Agent Lapp admitted that his records revealed he saw Appellant outside of the bar two months, and not two weeks, prior to searching his car on May 1, 2009. N.T. 9/29/10 at 12. Agent Lapp indicated that, based on the anonymous complaints, the activity he observed outside of the bar, and the fact he believed Appellant was residing with Ms. Bachman, which was not Appellant's approved residence, Agent Lapp decided to search Appellant's person and his vehicle after he was discovered at Ms. Bachman's residence. N.T. 9/29/10 at 12. Agent Lapp testified that, on May 1, 2009, after searching Appellant's vehicle, Agent Lapp searched Appellant's sister house, which was Appellant's approved residence. N.T. 9/29/10 at 14. Agent Lapp did not discover any contraband during the search of Appellant's sister's house. N.T. 9/29/10 at 14.

By order and opinion entered on December 6, 2010, the lower court denied Appellant's suppression motion, and on January 13, 2011, Appellant proceeded to a jury trial. At the conclusion of trial, Appellant was convicted of the crimes as indicated *supra,* and on February 24, 2011, Appellant was sentenced to an aggregate of five years to fifteen years in prison. This timely, counseled appeal followed, and the trial court directed Appellant to file a Pa. R.A.P. 1925(b) statement. Appellant timely complied, and the trial court filed a responsive Pa.R.A.P. 1925(a) opinion.

Appellant contends the lower court erred in denying his pre-trial suppression motion. Our standard of review is well-settled.

> In an appeal from the denial of a motion to suppress our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Griffin,* 24 A.3d 1037, 1041 (Pa.Super.2011) (quotation omitted).

Appellant initially challenges the following suppression court's factual findings on the basis the findings are not supported by the record: (1) After taking over the supervision of Appellant's case, Agent Lapp continued receiving reports that Appellant was engaged in drug trafficking, (2) Agent Lapp observed Appellant driving his vehicle outside a bar, which is known to be "a hub for drug dealing," (3) Agent Lapp told Appellant to "stop selling drugs," and (4) Appellant was "living" at Ms. Bachman's residence. Suppression Court Opinion filed 12/6/10 at 1–2, 4.

■ We have carefully reviewed the notes of testimony from the suppression hearing, and we find no merit to Appellant's contentions. For instance, with regard to the first challenged finding, Agent Lapp testified:

> After discussing with my supervisor and agents and the York supervisors that [Ms. Bachman] was still on parole, she was under supervision and that he has a history of drug sales, that's on drug sales after what I witnessed in the parking lot and allegations that were being made against him, we decided to conduct a search of [Ms. Bachman's] residence[.]

N.T. 9/29/10 at 8. This testimony sufficiently supports the suppression court's factual finding that "Agent Lapp continued receiving reports that [Appellant] was engaged in drug trafficking," Suppression Court Opinion filed 12/6/10 at 1 (citation to record omitted), and in any event, any prejudice with regard to this factual finding is *de minimis. See Commonwealth v. Hoover*, 16 A.3d 1148 (Pa.Super.2011).

■ With regard to the second challenged finding, Agent Lapp testified that he witnessed Appellant "driving around Columbia in a place where it's known that there's some drug activity outside of a bar." N.T. 9/29/10 at 6. From this testimony, the suppression court found "Agent Lapp observed [Appellant] driving a Mercury Mountaineer near a bar in Columbia, Lancaster, which is known to be a hub for drug dealing." Suppression Court's Opinion filed 12/6/10 at 1 (citation to record omitted). Appellant contends the suppression court's factual finding exaggerates Agent's Lapp testimony concerning the drug use outside of the bar. We conclude the trial court's factual finding is adequately supported by the record, and in any event, assuming, *arguendo,* Appellant is correct, we conclude the suppression court's error in this regard is, at most,

harmless since any prejudice to Appellant was *de minimis. See Hoover, supra.*

■ With regard to the third challenged finding, Agent Lapp testified as follows with regard to what he did and said after observing Appellant's activities outside of the bar:

> I pulled up next to [Appellant], I said, and we had a discussion. I saw what you just did and it was illegal. I should call the Columbia Police Department and search your truck, but I'm not going to. I'm going to give you one last opportunity to knock it off is what I told him.

N.T. 9/29/10 at 6–7. Additionally, on cross-examination, the relevant exchange occurred between Appellant's counsel and Agent Lapp:

> Q: You confronted him?
>
> A: That is correct.
>
> Q: And you told him you thought he was selling drugs; is that correct?
>
> A: That's correct.

N.T. 9/29/10 at 12. This testimony sufficiently supports the suppression court's factual finding that "Agent Lapp confronted [Appellant] and told him to stop selling drugs." Suppression Court Opinion filed 12/6/10 at 2 (citation to record omitted).

■ With regard to the fourth challenged finding, Agent Lapp testified as follows:

> So one day during routine I go to the Columbia Police Department lot to check up to see as part of my job. One of the officers stated that he believed [Appellant] might have been staying over in the Cool Creek area. So I thought—well, he told me that he didn't know where it was. Just said somewhere over there.
>
> I went over to Cool Creek Apartments, went to the management and I showed them a picture of [Appellant].

They recognized [Appellant]. They said he was staying in the apartment. At one time he was on the lease. He wasn't currently at that time, but prior he was on the lease with an Amy Bachman.

Well, when I went back to the office after that, I realized Amy Bachman was on parole supervision by our York office for drug possession. I talked to the supervising agent and I asked, is that [Appellant's] vehicle outside of her apartment when he conducted home visits, and he said yes. He said he saw his truck there when he would come to visit Amy in the morning. He would always leave around when I got there.

N.T. 9/29/10 at 7–8. Additionally, on cross-examination, Agent Lapp testified as follows:

Q: Based on that, and these anonymous complaints, you made the decision to search the residence and the vehicle?

A: That is correct. And also the fact that I didn't believe he was staying in his approved residence. He was staying in the residence of Amy Bachman.

N.T. 9/29/10 at 12. This testimony adequately supports the suppression court's factual finding that Appellant "was not living at his approved residence on a daily basis," and he was, in fact, "staying in an apartment leased by Amy Bachman." Suppression Court Opinion filed 12/6/10 at 2, 4.

■ Appellant's next contention is that the suppression court erred in concluding Agent Lapp had reasonable suspicion to search Appellant's person and vehicle on May 1, 2009.

61 Pa.C.S.A. § 6153 provides, in relevant part, the following:

**(b) Searches and seizures authorized.-**

(1) Agents may search the person and property of offenders in accordance with the provisions of this section.

(2) Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or Section 8 of Article I of the Constitution of Pennsylvania.

\* \* \*

**(d) Grounds for personal search of offender.-**

(1) A personal search of an offender may be conducted by an agent;

(i) if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision;

(ii) when an offender is transported or taken into custody; or

(iii) upon an offender entering or leaving the securing enclosure of a correctional institution, jail or detention facility.

(2) A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.

\* \* \*

(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i) The observation of agents.

(ii) Information provided by others.

(iii) The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of agents with the offender.

(vi) The experience of agents in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

\*   \*   \*

61 Pa.C.S.A. § 6153(b), (d) (bold in original).[2]

██ As this Court has stated:

Because the very assumption of the institution of parole is that the parolee is more likely than the ordinary citizen to violate the law, the agents need not have probable cause to search a parolee or his property; instead, reasonable suspicion is sufficient to authorize a search. Essentially, parolees agree to endure warrantless searches based only on reasonable suspicion in exchange for their early release from prison.

The search of a parolee is only reasonable, even where the parolee has signed a waiver ..., where the totality of the circumstances demonstrate that (1) the parole officer had reasonable suspicion to believe that the parolee committed a parole violation; and (2) the search was reasonably related to the duty of the parole officer.

*Commonwealth v. Hunter,* 963 A.2d 545, 551–52 (Pa.Super.2008) (quotations and quotation marks omitted). The determination of whether reasonable suspicion exists is to be considered in light of the totality of the circumstances. *See Commonwealth v. Shabazz,* 18 A.3d 1217 (Pa.Super.2011).

Applying the aforementioned principles to this case, we initially conclude that

Agent Lapp had reasonable suspicion to believe that Appellant was in violation of a condition of his supervision on May 1, 2009, and therefore, Agent Lapp was permitted to search Appellant's person. For instance, Agent Lapp testified that Appellant was approved to reside with his sister; however, every time Agent Lapp telephoned Appellant, he was not at his sister's house. A police officer from the Columbia Police Department informed Agent Lapp that he believed Appellant was residing in the Cool Creek area, which is not the area where Appellant's sister lived. Therefore, Agent Lapp took a photograph of Appellant to the Cool Creek Apartments, and the manager, who recognized Appellant, confirmed that Appellant was staying at the apartments with Amy Bachman. Agent Lapp returned to his office and discovered that Ms. Bachman was on parole supervision by the York office for drug possession. Agent Lapp contacted Ms. Bachman's supervising parole agent, who informed Agent Lapp that, when he visited Ms. Bachman during the early morning hours, Appellant's vehicle was always parked outside of Ms. Bachman's apartment and Appellant would leave upon the agent's arrival. As a result of this information, Agent Lapp, along with other parole agents, went to Ms. Bachman's Cool Creek apartment at 8:00 a.m. on May 1, 2009. Agent Lapp discovered Appellant's vehicle parked outside of the apartment and, when Ms. Bachman opened the door, Agent Lapp observed Appellant standing at the top of the steps with his car keys in his hands.

Based on the totality of the circumstances, including a consideration of the factors set forth in 61 Pa.C.S.A. § 6153(d)(6), we conclude Agent Lapp had

**2.** 61 Pa.C.S.A. § 6153 was formerly numbered 61 P.S. § 331.27a; the statutes contain substantially similar language. 61 Pa.C.S.A.

§ 6153 was amended, effective October 27, 2010. The amendment is not applicable to this case.

reasonable suspicion to conclude Appellant was violating a condition of his parole in that he was not residing at an approved residence, and therefore, Agent Lapp was permitted to take Appellant into custody and conduct a personal search of Appellant. *See* 61 Pa.C.S.A. § 6153(d)(1)(i), (ii); *Hunter, supra* (holding search of a parolee is reasonable where the parole officer has reasonable suspicion to believe that the parolee has committed a parole violation and the search was reasonably related to the officer's duty).

■ Additionally, we conclude Agent Lapp had reasonable suspicion justifying the search of Appellant's vehicle, which was parked outside of Ms. Bachman's residence. For instance, Agent Lapp testified that, in the fall of 2008, Appellant's original parole agent informed Agent Lapp that he had received anonymous tips that Appellant was engaged in illegal drug activity. During Agent Lapp's supervision of Appellant, Appellant was not working with any regularity and Agent Lapp told him to find work. One evening, approximately two months prior to May 1, 2009, Agent Lapp saw Appellant driving his vehicle around a bar, which was known for drug activity. The Agent observed as Appellant picked up an individual, drove around the area for a few blocks, returned to the same location, and dropped off the individual. Based on his experience, Agent Lapp believed he had just observed the sale of drugs, and therefore, Agent Lapp approached Appellant, informing him to stop selling drugs. Thereafter, Agent Lapp discovered that Appellant was staying at the Cool Creek Apartments with Ms. Bachman, who was on parole with regard to drug offenses. Upon finding Appellant at Ms. Bachman's apartment at 8:00 a.m. on May 1, 2009, and searching Appellant's person, Agent Lapp found in Appellant's pockets a scale, a large amount of money, and a couple of cell phones.

Based on the totality of the circumstances, including a consideration of the factors set forth in 61 Pa.C.S.A. § 6153(d)(6), we conclude Agent Lapp had reasonable suspicion to believe that Appellant's vehicle contained contraband, and therefore, he was permitted to search it. *See* 61 Pa.C.S.A. § 6153(d)(2), (6); *Commonwealth v. Brown,* 606 Pa. 198, 996 A.2d 473 (2010) (indicating anonymous tips corroborated by police may provide reasonable suspicion); *Commonwealth v. Koehler,* 914 A.2d 427 (Pa.Super.2006) (warrantless search of parolee's residence permitted where parole agent had reasonable suspicion to suspect residence contained evidence of a crime or violation of condition of parole).

■ Appellant's final contention is that the trial judge made improper, sarcastic remarks towards Appellant and improperly questioned the sole defense witness in a prejudicial, bias manner such that reversal is warranted. The Commonwealth contends Appellant has waived his claims by failing to object to any of the trial judge's challenged remarks or questions. Appellant admits that defense counsel failed to lodge a proper objection; however, citing to *Commonwealth v. Hammer,* 508 Pa. 88, 494 A.2d 1054 (1985), Appellant urges this Court to overlook the waiver doctrine and address the substantive claim on appeal.

We agree with Appellant that, in *Hammer,* our Supreme Court concluded that justice would not be served by strictly enforcing the waiver doctrine where the record revealed that objection by counsel would be meaningless and, in fact, intensify judicial animosity. Therefore, in *Hammer,* our Supreme Court overlooked defense counsel's failure to object to the trial judge's questioning of witnesses and addressed the substantive issue of whether

such questioning constituted reversible error.

Subsequently, however, in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), our Supreme Court specifically overruled *Hammer*, indicating that, generally, the appellate courts will not overlook defense counsel's failure to object and, with regard thereto, an appellant may present claims of ineffective assistance of counsel in a PCRA[3] petition. Indeed, recently, in *Commonwealth v. Barnett*, 25 A.3d 371 (Pa.Super.2011) (*en banc*), an *en banc* panel of this Court reaffirmed *Grant's* limitation on overlooking the waiver doctrine and held that, unless an appellant makes an express, knowing, and voluntary waiver of review pursuant to the PCRA, this Court will not engage in review of ineffective assistance of counsel claims on direct appeal.

In light of the aforementioned, we find Appellant's challenges to the trial judge's remarks and questioning of the defense witness to be waived and, to the extent Appellant has presented a claim of ineffective assistance of defense counsel, we dismiss the claim without prejudice to raise the claim in a subsequent PCRA petition.[4]

For all of the foregoing reasons, we affirm.

Affirmed.

---

3. Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541–46.

4. We note Appellant has not made an express waiver of review pursuant to the PCRA. *Barnett, supra.*