J-S34011-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KYNYON DORRELL NIXSON | |
| Appellant | No. 1224 WDA 2013 |

Appeal from the Judgment of Sentence June 24, 2013
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0003481-2012

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 14, 2014**

Kynyon Dorrell Nixson appeals from the judgment of sentence entered June 24, 2013, in the Erie County Court of Common Pleas.  Nixson was sentenced to an aggregate term of six to 23 months' imprisonment following his conviction, by a jury, of possession of a controlled substance and possession of drug paraphernalia.[1]  On appeal, Nixson argues the trial court erred in denying his motion to suppress drugs found in his residence by his parole officer.  For the reasons set forth below, we affirm.

The facts relevant to Nixson's suppression claim are set forth by the trial court as follows:

---

[1] 35 P.S. §§ 780-113(a)(16) and (a)(32), respectively.

At the time the charges were incurred, [Nixson] was on supervision from Venango County for DUI. His parole agent with the Pennsylvania Board of Probation and Parole was Agent Michael Davis. Davis had over sixteen years of experience as a parole agent. Davis began supervising [Nixson] in January of 2011. On January 27, 2011, [Nixson] executed Conditions Governing Special Probation/Parole whereby [he] expressly consented to the search of his residence as follows:

> c. I expressly consent to the search of my person, property and residence without a warrant by agents of the Pennsylvania Board of Probation and Parole. Any items, the possession of which constitutes a violation of probation/parole, shall be subject to seizure, and may be used as evidence in the probation/parole violation/revocation process.

*Commonwealth Ex. No. 1*

On August 25, 2012, Davis went to [Nixson's] residence at approximately 5:30 p.m. to perform a routine check. Davis had previously been to [Nixson's] residence on 10 to 15 occasions when [Nixson] was present, and had a total of approximately 40 personal interactions with [Nixson] by that time. Davis testified [Nixson] had always been compliant and forthcoming with Davis, even when it came to admitting to parole violations. Davis testified he had dealt with [Nixson] long enough to know what his mannerisms and behavior were.

On August 25th, Davis knocked several times on [Nixson's] partially open door. [Nixson] failed to respond to the knocks. Davis opened the door slightly and called in to [Nixson]. Davis observed [Nixson] come around the corner from the living room into the kitchen. Davis entered the residence and asked [Nixson] why he hadn't answered the door. Davis testified [Nixson] said he was in the back room. Davis knew this was inaccurate as he observed [Nixson] enter the kitchen from the living room rather than from the back room down the hallway. Davis'[s] report from the incident indicated [Nixson] related he was in the bathroom.

[Nixson] was acting extremely nervous and sweating profusely. Davis asked [Nixson] what was going on and [Nixson] just kept saying, "Nothing, nothing, nothing is going on, nothing is happening, nothing is going on." Davis testified these were abnormal characteristics for [Nixson] based on

- 2 -

Davis'[s] prior interactions with him, which included previously catching [him] in the midst of parole violations.

Davis believed something inappropriate was going on based on [Nixson's] demeanor which included avoidant responses to Davis'[s] questioning, [Nixson's] uncharacteristic lack of eye contact with Davis, extreme nervousness and profuse sweating. Based on Davis'[s] experience, those responses were indicative of activity that would give rise to new criminal charges or parole violations.

While Davis was questioning [Nixson], a man knocked at [Nixson's] door. Davis answered the door. The caller asked for a person by a nickname Davis didn't recognize. Davis said the person was unavailable and shut the door. Davis became further concerned for his safety as he was alone. Davis testified he wanted to secure the residence before something bad happened. Davis testified he asked [Nixson] if he could conduct a search. [Nixson] consented to the search. Davis did not seek permission from a supervisor to conduct a search.

Davis searched the area of the sofa in the area where [Nixson] was sitting. Davis found a cell phone behind the couch. Davis searched the kitchen where he found a bag of beer cans. This concerned Davis because he caught [Nixson] drinking a few weeks earlier. Davis continued a search of [Nixson's] sofa where he found a white sock containing drug paraphernalia and cocaine, shoved down behind a sofa cushion. Davis placed [Nixson] in handcuffs. Davis called another agent and asked him to come to the residence and call the City of Erie Police.

Trial Court Opinion, 10/15/2013, at 2-4.

Nixson was subsequently charged with possession with intent to deliver (PWID) cocaine,[2] possession of cocaine and possession of drug paraphernalia. He filed a pretrial motion to suppress, arguing that Agent Davis had no reasonable suspicion to conduct a search of his residence. ***See***

---

[2] 35 P.S. § 780-113(a)(30).

Omnibus Pretrial Motion for Relief, 2/26/2013. Following a hearing conducted on March 25, 2013, the trial court denied Nixson's motion to suppress. The case proceeded to a jury trial on May 16, 2013, and the jury returned a verdict of guilty on the charges of possession of cocaine and possession of drug paraphernalia, and not guilty on the charge of PWID. Nixson was sentenced on June 24, 2013, to a term of six to 23½ months' incarceration for possession of cocaine, and a concurrent one-year probationary term for possession of drug paraphernalia. He filed a post-sentence motion, which the trial court denied on July 1, 2013. This timely appeal followed.[3]

Nixson raises two related claims on appeal. First, he contends Agent Davis conducted a search of his residence in violation of his statutory authority under 61 Pa.C.S. § 6153, that is, without prior approval of the agent's supervisor, and absent reasonable suspicion that Nixson was either in possession of contraband or evidence of violations of the terms of his parole. Second, Nixson argues that, even if we conclude Agent Davis had reasonable suspicion to conduct a "personal search,"[4] the drugs were not

---

[3] On July 29, 2013, the trial court ordered Nixson to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After receiving two extensions of time to comply with the court's directive, Nixson filed a concise statement on September 25, 2013.

[4] A "personal search" is defined as "[a] warrantless search of an offender's person, including, but not limited to, the offender's clothing and any
*(Footnote Continued Next Page)*

found on Nixson's person or within his reach. Accordingly, Nixon asserts the trial court erred in denying his motion to suppress.

Our review of a trial court's denial of a pretrial motion to suppress evidence is well-settled:

> In an appeal from the denial of a motion to suppress our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Colon*, 31 A.3d 309, 312 (Pa. Super. 2011) (quotation omitted), *appeal denied*, 42 A.3d 1058 (Pa. 2012).

At the time of the search, Agent Davis was Nixson's parole officer, and was conducting a routine check of Nixson's residence. Therefore, Agent Davis derived his authority from 61 Pa.C.S. § 6153, which provides, in relevant part:

> **(b) Searches and seizures authorized.**--
>
> (1) Agents may search the person and property of offenders in accordance with the provisions of this section.

*(Footnote Continued)* ──────────────

personal property which is in the possession, within the reach or under the control of the offender." 61 Pa.C.S. § 6151.

(2) Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or section 8 of Article I of the Constitution of Pennsylvania.

**(c) Effect of violation.**--No violation of this section shall constitute an independent ground for suppression of evidence in any probation or parole proceeding or criminal proceeding.

**(d) Grounds for personal search of offender.**--

(1) A personal search of an offender may be conducted by an agent:

(i) if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision; …

(2) A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.

(3) Prior approval of a supervisor shall be obtained for a property search absent exigent circumstances. No prior approval shall be required for a personal search.

\* \* \* \*

(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i) The observations of agents.

(ii) Information provided by others.

(iii) The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of agents with the offender.

(vi) The experience of agents in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S. § 6153(b)(1)-(2), (d)(1)-(6).[5]

Therefore, the statute provides that a parole agent may not conduct a search that would violate a parolee's constitutional rights. *Id.* at 6153(b)(2). Rather, an agent must have **reasonable suspicion** that a parolee possesses contraband or other evidence of a violation of the terms of his parole before subjecting him to a warrantless search. *Id.* at 6153(d)(1)(i). Further, while the statute proscribes a "property search"[6] in the absence of either exigent circumstances or prior approval from a supervisor, it also states that "**[n]o violation of this section shall constitute an independent ground for suppression of evidence** in any probation or parole proceeding or criminal proceeding." *Id.* at 6153(c),

---

[5] In his brief, Nixson argues that Agent Davis operated outside his authority as set forth in 42 Pa.C.S. § 9912. However, that statute details the supervisory authority of **county probation officers**. Here, Agent Davis testified that he was an agent for the Pennsylvania Board of Probation and Parole, and that Nixson was on parole for DUI at the time of the search. *See* N.T., 3/25/2013, at 6, 15. Therefore, Agent Davis derived his supervisory authority from Section 6153. Nevertheless, the statutes contain substantially identical provisions with regard to the issues raised herein.

[6] A "property search" is defined as "[a] warrantless search of real property, vehicle or personal property which is in the possession or under the control of the offender." 61 Pa.C.S. § 6151.

(d)(3) (emphasis supplied). Accordingly, under the clear terms of the statute, evidence recovered during a warrantless search of a parolee's person or property is subject to suppression **only if** the search was conducted in violation of the parolee's constitutional rights.

Here, the trial court found that the drugs were recovered during a "personal search" of Nixson, rather than a "property search." **See** Trial Court Opinion, 10/15/2013, at 6 (finding that the drugs were found behind a sofa cushion in an area that "was within reach of [Nixson] and under his control."). Furthermore, the court concluded the search was supported by Agent Davis's reasonable suspicion that Nixson violated the conditions of his parole, and that Nixson had "verbally consented to the search, and previously consented to the search in writing pursuant to the contract of special conditions governing his parole." **Id.**

On appeal, Nixson argues Agent Davis exceeded his authority when he conducted a "property search" of the residence. First, he claims that, since there were no exigent circumstances supporting the search, Agent Davis was required to obtain prior approval for the search pursuant to subsection (d)(3). Moreover, he asserts his signing of the "consent to search" form as a provision of his parole did not "trump statutory law." **Id.** at 13. Nixson also states Agent Davis had no reasonable suspicion to believe that Nixson "was engaging in criminal activity or conduct violating the terms of his release" in order to justify a search of his person. Nixson's Brief at 14. Alternatively, he contends that even if we find Agent Davis acted with the

requisite reasonable suspicion, the drugs were found during an unauthorized "property search," rather than a "personal search."

We agree with Nixson that the drugs were uncovered during a "property search" of his residence, rather than a "personal search."[7] Moreover, we agree that under the terms of subsection (d)(3), in the absence of exigent circumstances,[8] Agent Davis was obligated to obtain prior approval from his supervisor to conduct a "property search," and that Agent Davis failed to do so. We also agree that the fact Nixson signed a "consent

---

[7] It is evident from a review of Agent Davis's testimony at the suppression hearing that the drugs were found while the agent was conducting a property search of Nixson's residence. Before beginning the search, Agent Davis asked Nixson to remove the cushions from the left section of the "two section" corner couch he was sitting on in the living room. N.T., 3/25/2013, at 22. After finding no contraband, Agent Davis proceeded to search the kitchen and other areas in the living room **before** returning to search the right section of the couch, where he eventually found the drugs. *Id.* at 23-24. There was no testimony that the drugs secreted in the right section of the couch were within Nixson's reach or under his control while he was seated on the left section of the couch, which Agent Davis described as a "big corner couch" of "fairly good size." *Id.* at 25. Accordingly, we disagree with the trial court's conclusion that the drugs were found during a "personal search" of Nixson.

[8] We note that neither the trial court, nor the Commonwealth, contend that exigent circumstances were present in this case to justify the search, and our review of the record reveals none. *See Commonwealth v. Howard*, 64 A.3d 1082, 1089 (Pa. Super. 2013), *appeal denied*, 74 A.3d 118 (Pa. 2013) (factors to be considered in determining whether exigent circumstances exist for warrantless search of private residence include: gravity of offense; reasonable belief offender is armed; clear showing of probable cause; likelihood suspect will escape if not swiftly apprehended; and time of entry).

to search" form as a condition of his parole was not determinative of whether Agent Davis had the requisite reasonable suspicion to search his residence.[9] *See Commonwealth v. Hunter*, 963 A.2d 545 (Pa. Super. 2008) ("The search of a parolee is only reasonable, **even where the parolee has signed a waiver** similar to the one in this case, where the totality of the circumstances demonstrate that "(1) the parole officer had reasonable suspicion to believe that the parolee committed a parole violation; and (2) the search was reasonably related to the duty of the parole officer.") (emphasis supplied), *appeal denied*, 980 A.2d 605 (Pa. 2009).

Nevertheless, subsection (c) of the statute clearly states "[n]o violation of this section shall constitute an independent ground for suppression of evidence in any probation or parole proceeding or criminal proceeding." 61 Pa.C.S. § 6153(c). Therefore, while the fact that Agent Davis failed to obtain prior approval from a supervisor before conducting a "property search" of Nixson's residence was improper under the statute, it

---

[9] We also reject the trial court's suggestion that Nixson's statement to Agent Davis constituted a consent to search. Agent Davis was Nixson's parole agent, and had already indicated to Nixson that Nixson's behavior had aroused his suspicion. *See* N.T., 3/25/2013, at 17 ("I was asking him what was going on, why he didn't answer the door, what – why are you acting like this. You're making me nervous…"). Therefore, when Agent Davis told Nixson that he was going to search the residence, we fail to see how Nixson's response, "Go ahead, there's nothing in here," could constitute a voluntary consent to search. *See id.* at 22.

did not constitute grounds for suppression of the evidence so long as the search did not violate Nixson's constitutional rights. Therefore, we must determine whether the trial court properly found that Agent Davis possessed the requisite reasonable suspicion "to believe that [Nixson] possesse[d] contraband or other evidence of violations of the conditions of supervision[.]" 61 Pa.C.S. § 6153(d)(1)(i).

Our review of the record reveals that, at the time of search, Agent Davis had been a probation/parole officer for 16 years, and had been supervising Nixson for 18 months. N.T., 3/25/2013, at 6-7, 10. He had visited Nixson's home 10 to 15 times, but had approximately 40 personal interactions with Nixson so that he was very familiar with Nixson's demeanor and personal characteristics. *Id.* at 11, 13. In fact, Agent Davis testified that, generally, Nixson was "very compliant" and "remorseful" even when, on prior occasions, the agent had caught him violating the conditions of his parole. *Id.* at 15. However, on the day in question, Agent Davis observed Nixson exhibiting the characteristics which were not "normal for him." *Id.* at 14. Specifically, the agent testified:

> His behavior and mannerisms on that day immediately put me on point. I was legitimately scared. I did not know what was going on. I was not comfortable. Something was going on in that residence and I did not know what. And, typically, if I ever asked him a question prior, he would answer it. Kynyon, have you been drinking? Yes. I mean, he was – he was never trying to hide anything from me. He was always forthcoming[.]

*Id.* at 16-17. However, when Agent Davis asked him what was going on, Nixson "just kept saying, nothing, nothing, nothing is going on, nothing is happening, nothing is going on." *Id.* at 17. The agent explained that Nixson "was not acting the way [he] had previously seen him act." *Id.* He was also nervous, sweating profusely, providing avoidant answers, and not making eye contact. *Id.* at 17-18. Moreover, Agent Davis testified that when he has conducted searches of other parolees, who have exhibited atypical behavior, he has uncovered contraband or violations "probably a hundred percent of the time." *Id.* at 20.

Therefore, considering the factors set forth in subsection 6153(d)(6), we find the record supports the trial court's determination that Agent Davis had reasonable suspicion that Nixson possessed contraband or evidence of a violation of the terms of his parole when he conducted a "property search" of Nixson's residence. Accordingly, we conclude the trial court properly denied Nixson's suppression motion.[10]

Judgment of sentence affirmed.

---

[10] To the extent that our conclusion is distinct from the trial court's finding, we note we "may affirm the lower court on any basis, even one not considered or presented in the court below." *Commonwealth v. Burns*, 988 A.2d 684, 690 n.6 (Pa. Super. 2009), *appeal denied*, 8 A.3d 341 (Pa. 2010).

- 12 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/14/2014