J-S57027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 2132 EDA 2016 |
| ROBERT MOKSHEFSKY | | |

Appeal from the Order Entered June 21, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0010506-2015

BEFORE:  GANTMAN, P.J., PANELLA, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.                    **FILED JANUARY 10, 2018**

The Commonwealth of Pennsylvania appeals from the order entered in the Philadelphia County Court of Common Pleas granting, in part, the suppression motion of Appellee, Robert Mokshefsky.[1] Relevant to the Commonwealth's challenge on appeal, the court suppressed a gun discovered in a car driven by Appellee to a parole meeting. As a condition of his parole, Appellee was forbidden to drive and carry prohibited offensive objects. Appellee walked into his parole office—carrying brass knuckles and car keys. Somehow, Appellee did not expect the probation officer to investigate these items. Surprisingly, the suppression court agreed with that position. We reverse.

_____

[1] The Commonwealth has certified that the suppression order substantially handicaps the prosecution, and that the appeal is not intended for delay purposes. Thus, we may review it. ***See*** Pa.R.A.P. 311(d).

We take the relevant facts and procedural history from the suppression

court's opinion.

On August 19, 2015, while substituting for Appellee's assigned [state] parole officer, Agent [Bernard] McCole met Appellee in the waiting room of the Philadelphia parole office. As [t]he Appellee walked through the metal detector, it alerted. Prior to entering the metal detector, Appellee emptied his pockets, revealing a set of keys and a car door electronic key fob.

Appellee indicated that he had nothing on him that would cause the machine to activate. Agent McCole instructed Appellee to go through the machine several times. Each time it sounded an alert. As a result, the agent patted down Appellee and recovered a set of brass knuckles in Appellee's possession. Agent McCole then placed Appellee in handcuffs and placed him in the duty room since possession of the brass knuckles constituted a parole violation.[]

After Appellee was handcuffed, another parole agent consulted with a supervisor who suggested that Appellee be queried about his possession of the keys and the key fob to an automobile. Appellee replied that he had been dropped off at the parole office by his girlfriend. This response piqued the suspicion of the agents because they believed that Appellee had lied about how he got to the office and had driven there in violation of a condition of parole, given that he had possession of the key fob to the vehicle. Agent McCole accompanied by another agent took Appellee's keys and, using the key fob, walked to the parking lot, depressing the car alarm on the fob. In doing so, a car alerted. The agents then walked over to the vehicle and used the key fob to open the trunk and unlock the doors, intending to search the vehicle. Before searching the trunk, Agent McCole looked into the passenger compartment of the vehicle and observed knives in the front center console.

The agents then entered the vehicle and conducted a search and recovered a silver []9[-]millimeter hand gun in a compartment situated between the driver's and passenger's seat. The agents flagged down a police cruiser so that its officers could search the car and recover the gun because, by regulation, parole officers must contact the authorities upon discovering evidence of

a crime. The police did not confiscate the knives because they did not consider them to be illegal. Instead, the agents took possession of the knives as their possession constituted a parole violation.

Agent McCole conceded [] that he had no information that the car searched contained contraband or was in any way connected to Appellee. He further states that he did not obtain a search warrant before searching the car because it was his belief that the car could be searched without one. The agent added that he believed Appellee had lied when he said he had nothing in his pockets, after being found in possession of the brass knuckles and also about how he traveled to the parole office.

Suppression Court Opinion, 1/11/17, at 2-3.

The Commonwealth charged Appellee with multiple violations of the Pennsylvania Uniform Firearms Act of 1995. Subsequently, Appellee filed a motion to suppress the gun, as well as statements he made to the parole officers. Following a hearing, the suppression court granted Appellee's motion in relation to the gun, finding the parole officer lacked reasonable suspicion to search Appellee's vehicle. This appeal follows.

On appeal, the Commonwealth sets forth two arguments to support their claim that the suppression court erred by suppressing the gun. First,[2] the Commonwealth contends the parole officer had reasonable suspicion to search the vehicle based upon his observation of knives in plain view in the vehicle. Next, the Commonwealth claims Appellee did not have standing to challenge the search of the vehicle because Appellee did not have a privacy interest in the vehicle.

_____

[2] We have reordered these arguments for ease of disposition.

- 3 -

Our scope and standard of review following an order granting a suppression motion are as follows.

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Because Appellee prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, "[t]he suppression court's conclusions of law … are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts." As a result, the conclusions of law of the suppression court are subject to plenary review.

*Commonwealth v. Salter*, 121 A.3d 987, 992 (Pa. Super. 2015) (citation omitted; brackets in original).

Our review of the record with respect to the suppression court's factual findings reveals that the court's findings of fact are traceable to testimony in the record. Accordingly, we focus our attention to the propriety of the court's legal conclusions. We find the court's conclusion that the parole agent lacked the requisite reasonable suspicion to search the vehicle erroneous.

Individuals under parole supervision have limited rights against search and seizure. *See Commonwealth v. Williams*, 692 A.2d 1031, 1035 (Pa. 1997). "Essentially, parolees agree to endure warrantless searches based only on reasonable suspicion in exchange for their early release from prison."

*Commonwealth v. Colon*, 31 A.3d 309, 315 (Pa. Super. 2011) (citation omitted). State parole agents are permitted to search a parolee's property "if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S.A. § 6153(d)(2).

> While the determination of whether reasonable suspicion exists should be evaluated in light of the totality of the circumstances, under section 6153(d)(6) …
>
> the following factors, where applicable, may be taken into account:
>
> (i) The observations of agents.
> (ii) Information provided by others.
> (iii) The activities of the offender.
> (iv) Information provided by the offender.
> (v) The experience of agents with the offender.
> (vi) The experience of agents in similar circumstances.
> (vii) The prior criminal and supervisory history of the offender.
> (viii) The need to verify compliance with the conditions of supervision.

*Commonwealth v. Sperber*, ___ A.3d ___, ___, 2017 WL 6331100, *3 (Pa. Super., filed December 12, 2017) (citing 61 Pa.C.S.A. § 6153(d)(6)).

Here, as discussed above, the suppression court concluded the parole agent's search of the vehicle was not supported by reasonable suspicion. The court inferred Appellee had been driving the car, but concluded the agent lacked reasonable suspicion to believe there was any contraband inside the

vehicle at the time he decided to conduct the search. *See* Suppression Court Opinion, 1/11/17, at 6.

However, the court's own recitation of the facts strongly supports Agent McCole's claim of reasonable suspicion. Appellee walked into a meeting with parole officers carrying brass knuckles, in clear violation of the conditions of his parole. Upon further search, the agents found a car key and fob on Appellee, which he claimed belonged to his girlfriend's vehicle. As a condition of his parole, Appellee was not permitted to drive, and when asked, Appellee denied driving to the parole office and denied that the vehicle was on the premises. However, upon activating the alarm on the fob, the vehicle altered the agents to its presence within the parking lot. Given the totality of the circumstances, Agent McCole clearly had reasonable suspicion that additional parole violations, including proof that Appellee drove the vehicle to the parole meeting, may be uncovered upon a search of the vehicle.

Further, in contradiction to the suppression court's conclusion, the statute does not specifically require a parole officer to have reasonable suspicion at the time they *decide* to perform a search. Rather, the statute provides the parole officer must have reasonable suspicion at the time the search commences. *See* § 6153(d)(2). Therefore, because there is no legal support for the suppression court's assertion that the search of the vehicle

occurred prior to the actual entry of the agents into the vehicle,[3] Agent McCole's observation of the knives in plain view in the center console prior to entering the vehicle should have been considered in an analysis of reasonable suspicion.

Based upon the totality of the circumstances, including a consideration of the factors set forth in § 6153(d)(6), we conclude Agent McCole had ample reasonable suspicion to believe Appellee's vehicle contained contraband, and therefore, he was permitted to search it. Thus, we find the court erred by suppressing evidence of this search. Therefore, we reverse the suppression court's order.[4]

Order reversed. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/10/18

---

[3] The suppression court found the act of unlocking the doors of the car and popping the trunk with a key fob constituted a search in itself. **See** Suppression Court Opinion, 1/11/17, at 4.

[4] Given our disposition, we need not address the Commonwealth's second issue on appeal.