J-S36006-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS JAMES | : | |
| | : | |
| Appellant | : | No. 1969 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 13, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005501-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS JAMES | : | |
| | : | |
| Appellant | : | No. 1970 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 13, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005502-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS JAMES | : | |
| | : | |
| Appellant | : | No. 1971 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 13, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005503-2015

J-S36006-21

BEFORE:  LAZARUS, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                    Filed: December 23, 2021

Marcus James appeals[1] from the judgment of sentence, entered in the

Court of Common Pleas of Philadelphia County, following his convictions for

attempted robbery of a vehicle,[2] attempted theft by unlawful taking,[3] robbery

with the threat of immediate serious injury,[4] and theft by unlawful taking of

movable property.[5]  After careful consideration, we affirm.

On April 22, 2015, James stole a car that he subsequently used to

commit two separate robberies.  N.T. Jury Trial, 11/8/16, at 27.  That day,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that James complied with the requirements of **Commonwealth v. Walker**, 189 A.3d 969, 977 (Pa. 2018), by filing notices of appeal, which each listed all three docket numbers, and designating the relevant docket number on each, by placing a check mark next to the appropriate docket number to identify which notice corresponded with each appealed case.  **See Commonwealth v. Johnson**, 236 A.3d 1141 (Pa. Super. 2020) (*en banc*) (where defendant filed four notices of appeal and listed all four docket numbers on all four notices, defendant complied with **Walker** by italicizing one relevant docket number on each notice to identify which notice corresponded with each appealed case); **Commonwealth v. Larkin**, 235 A.3d 350 (Pa. Super. 2020) (applying holding in **Johnson** and reiterating that **Commonwealth v. Creese**, 216 A.3d 1142 (Pa. Super. 2019), is expressly overruled so far as it mandates notice of appeal may only contain one docket number; fact that defendant placed both docket numbers on a single notice of appeal "is of no consequence.").  Therefore, we may proceed to review the merits of James' appeal.

[2] 18 Pa.C.S.A. § 3702(a); 18 Pa.C.S.A. § 901(a)

[3] 18 Pa.C.S.A. § 901(a); 18 Pa.C.S.A. § 3921(a).

[4] 18 Pa.C.S.A. § 3701(a)(1).

[5] 18 Pa.C.S.A. § 3921(a).

- 2 -

Isaac Glasgo, James' employer and the owner of an auto body shop in Haddon Township, New Jersey, noticed that his blue Nissan Maxima, which Glasgo regularly left at his shop, was missing. *Id.*, 11/9/16, at 67. Glasgo checked around his shop for his key and asked his employees present at work if they had the key. *Id.* Upon realizing they did not have the key, Glasgo called the Haddon Township Police and reported the car stolen. *Id.* at 67-68.

Later that same day, at approximately 3:37 p.m., James entered the Dollar General store on 5th and Spring Garden Streets in Philadelphia. *Id*. at 84. James picked up a plastic bag and approached the cashier, Shavone Hargett, at the counter, telling her, "Give me all the money out of the f[*@]king register or I'll shoot you." *Id.* James had his hand in his coat pocket and was "moving it around as if he had a gun." *Id.* at 88. Hargett stated that she believed James when he said he had a gun. *Id.* at 88. Hargett left the cash register drawer open so that James could take the money, but James did not do so. *Id.* at 91. Hargett shut the drawer and left the area. *Id.* at 92. James left the Dollar General at 3:38 p.m. *Id.*

Officer Quay Chim received a radio call of a robbery in progress at "point of gun" at the Dollar General at 5th and Spring Garden Streets. *Id.* at 31. Officer Chim responded to the scene, where he interviewed Hargett. *Id*. at 33. After speaking to Hargett and watching the surveillance video, Officer Chim radioed a detailed description of the perpetrator. *Id.*

At approximately 3:45 p.m., Sarah Stone drove to the CVS at 4th and Spring Garden Streets with her four-year old daughter in a car seat in the

backseat. *Id.*, 11/8/16, at 39. When Stone opened her car door to get out, James was inches from her outside of the car. *Id.* at 41. Stone testified that James told her that he had a gun and that "she should move over and get in the passenger seat." *Id*. Stone kicked James in the stomach to get him away from her and started screaming. *Id.* at 42. James punched Stone in the face and then punched her visibly pregnant stomach with a closed fist, put both hands around her neck, and then grabbed her by the ankles attempting to drag her out of the car. *Id.* at 42-43. Stone continued to kick and scream and fight, protecting both herself and her small child, who was still seated in the back of the car. *Id.*

At that point, a good Samaritan, Steve Inszennik, pulled James off Stone and threw him to the ground. *Id.*, 11/9/16, at 8. Stone was able to shut and lock the door of her car. *Id.*, 11/8/16, at 45-46. Stone called 911 and described James to the 911 operator as Inszennik and James continued struggling with each other by her driver's side window. *Id.* at 46. James then fled toward the blue Maxima parked directly next to Stone's car. *Id.* In doing so, James fell to the ground, dropping the keys out of his pocket. *Id.*, 11/9/16, at 9. Inszennik grabbed the keys and followed James to the blue Maxima. *Id.* at 10. James got in the car, but then exited out and pushed Inszennik, and demanded his key. *Id.* at 26. Inszennik threw the key into 4th Street to buy some time to keep James at the scene until the police arrived. *Id.* at 10.

James searched and found the keys in the street. *Id.* He started the car with the key and began to move it out of the parking space, but the car stalled and would not start again after James tried repeatedly. *Id.* at 11. Inszennik took a clear picture of James in the driver's seat for identification purposes for the police and testified that once the car would not start again, James got out of the car and fled the scene. *Id.* at 18.

After remaining at the first robbery scene at the Dollar General for about ten minutes, Officer Chim received information that the suspect from the CVS robbery was heading north on 5th Street on foot. *Id.* at 36. While heading to 5th Street, Officer Chim saw James—whom he recognized from the surveillance video—about one block away from 5th Street on Fairmount Avenue. *Id.* at 39. Officer Chim ordered James to drop to the ground, but James kept walking, which caused Officer Chim to tackle and arrest James. *Id.* at 39-41. The police later matched the vehicle identification number of Glasgo's stolen blue Nissan Maxima to the car James used during the robberies. *Id.* at 69.

Before jury selection began, the trial court reminded James that the Commonwealth offered him a plea deal and mentioned that the court could "give [James a] 20 to 40 years [sentence] and not blink an eye." *Id.*, 11/7/16, at 5. James reassured the trial court that he wanted to go to trial and complained to the trial court that he never received discovery from his defense counsel. *Id.* at 10. Although defense counsel did not send James discovery, the trial court noted that James did not "need the discovery sent to [him]" and that defense counsel had "followed the rules of criminal procedure." *Id.*

Defense counsel and James then argued over whether defense counsel had visited James in prison to go over his case and show him screenshots from the surveillance video used as evidence at trial. *Id.* The following exchange occurred:

> [James]: Okay. I [have] seen [defense counsel] twice and then the last time I was here in June, we never went over my case.
>
> [Trial Court]: [Defense counsel], is there anything you want to say, for the record? What information do you need to go over? There's a videotape . . .
>
> [Defense Counsel]: Your Honor, just for the record, I have met with Mr. James. I explained to him my thoughts on this case. He has not taken any part of any advice I shared with him. And he has told me time and again that he wishes to go to trial. And I am here today representing him and following through with his wishes.
>
> \*    \*    \*
>
> [James]: I have yet to see the tape.
>
> \*    \*    \*
>
> [Trial Court]: There's no way to get that into prison to see you, but I'm sure we can make arrangements for you to see that before the day is over. Is that going to change your mind?
>
> [James]: It's a possibility.
>
> \*    \*    \*
>
> [Defense Counsel]: I had [screen shots] up at the prison as well, but I'll be more than happy for [James] to look at the screen shots inside the Dollar General Store, as well as the cell phone pictures.
>
> [Trial Court]: Oh, that's right because witnesses[,] as this was going on[,] took out their phones and started taking pictures of you.
>
> [James]: I didn't see them.

[Trial Court]:  [Defense counsel] just looked me in the eye, an officer of the [c]ourt, whose entire livelihood depends on being honest to the [c]ourt.

[James]:  So[,] he wouldn't lie at all?

[Trial Court]:  He wouldn't lie to me.  I've known this man 17 years personally.  There is no chance that I would believe you over him.

[James]:  We already know that.

[Trial Court]:  I'm telling you . . . he's already told me he's been to the prison twice to see you.

*      *      *

[James]:  Did [defense counsel] come up and show me the video?

[Trial Court]:  He's not asking you nor am I asking you if you saw the video.  I know you haven't seen the video.  There's no way the prison let's him bring in a computer to show a video.  I know that.

[James]:  Yes.  They do.

[Defense Counsel]:  Seeing the video has been nothing you asked about.

*Id.* at 10-14.  James continued to claim that his defense counsel never visited him in prison, until he ultimately conceded that defense counsel visited at least one time around April or May of 2016 and again in June.  *Id.* at 17-22.  Finally, after the trial court's warning that it was "not going to have nonsense in [the] courtroom[,]" James agreed not to argue with his own attorney continuing into the trial.  *Id.*  However, James did ask whether he could have another attorney, to which the trial court answered, "No.  The time for having done that was long ago."  *Id.* at 17.  James then complained that defense counsel never informed him of that either.  *Id.* at 17-18.

- 7 -

On November 10, 2016, a jury convicted James of the above-listed offenses, and, on January 13, 2017, the trial court sentenced him to 20 to 40 years of state incarceration.

James filed untimely post-sentence motions on January 25, 2017, that were denied by operation of law on May 25, 2017. James filed a *pro se* Post Conviction Relief Act (PCRA)[6] petition on September 17, 2020. The trial court granted the petition and reinstated James' post-sentence motion and direct appeal rights *nunc pro tunc* on September 18, 2020, finding that his petition met the newly-discovered fact exception to the PCRA's jurisdictional time-bar. 42 Pa.C.S.A. § 9545(b)(1)(ii). On October 20, 2020, James filed a timely notice of appeal. James and the trial court subsequently complied with Pa.R.A.P. 1925.

On appeal, James raises the following issues for our review:

1. Whether [the] trial court erred when it allowed the Commonwealth to prosecute two unrelated robberies [a]t [James'] trial without the Commonwealth establishing a reason for doing so and/or not moving to bring in evidence of other crimes as required under Pennsylvania Rules of Evidence 404(b)(1)(2)[?]

2. Whether [James] received a fair and impartial trial when he informed the court that his attorney failed to speak to him about the conduct of his trial and the [trial] court informed him that it would believe counsel over him[?]

3. Whether the trial court erred when it allowed the prosecution of a crime committed in New Jersey to go forward in Pennsylvania[?]

---

[6] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

- 8 -

Appellant's Brief, at 3-4.

In his first challenge, James alleges the trial court erred by allowing the Commonwealth to prosecute the two robberies in one trial, in violation of Pa.R.Crim.P. 582, where James claims that the crimes are unrelated. Further, James contends that the evidence of the vehicle theft in New Jersey and the evidence of the Dollar General store robbery constituted prior bad acts evidence, and thus, James contends the trial court erred by allowing the Commonwealth to bring in such evidence without giving notice to defense counsel pursuant to Pa.R.E. 404(b)(1)(2). Appellant's Brief, at 16-17. James argues that the two robberies and motor vehicle theft lack any evidentiary connection, where the motor vehicle theft occurred a day before the CVS robbery and the robbery at the Dollar General Store lacked any testimonial identification of James. *Id.*

James has waived his challenges to joinder and the admission of prior bad acts evidence, as he raises the issues for the first time on appeal and never made any motion or objection relating to the issues in the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); Pa.R.Crim.P. 583 (comments) ("any request for severance must ordinarily be made in the omnibus pretrial motion or it is considered waived"); *Commonwealth v. Henkel*, 938 A.2d 433, 445 (Pa. Super. 2007) (failure to object to evidence of prior bad acts at trial results in waiver). Additionally, James waived his challenge that the court erred by trying the non-robbery charge of *vehicle theft* at the same time

because James failed to raise this issue in his Rule 1925(b) statement, which only challenged the prosecution of the robberies in the same trial. **See** Pa.R.A.P. 1925(b)(4)(vii) (issues not raised in Rule 1925(b) statement are waived).

In his second challenge, James alleges the trial judge improperly told James that the judge would believe defense counsel over James after James disagreed with defense counsel's claim that counsel visited James twice in prison to discuss his case and show him a video. Appellant's Brief, at 3-9. James argues that the trial court's conduct prejudiced him by improperly showing disfavor for him, disfavor for James' decision to go to trial, and "a capricious disbelief in what [James] was saying." **Id.** James also alleges that his own defense counsel's "primary reason for going to prison was to get [James] to accept the Commonwealth[']s deal[,]" and thus, "the court should have realized that there was a serious problem," as it may have demonstrated counsel's ineffectiveness. **Id.** at 9.

James has also waived his claim of bias on the part of the trial judge because he failed to lodge a timely objection to the fairness and impartiality of the proceedings during trial or request the trial judge's recusal or disqualification. **See** Pa.R.A.P. 302(a) (issues not raised by timely objection, motion to strike or motion *in limine* in lower court are waived and cannot be raised for first time on appeal); **Commonwealth v. Luketic**, 162 A.3d 1149, 1157-58 (Pa. Super. 2017) (requests for recusal or disqualification require earliest possible objection and must be clear and specific). Moreover, James

- 10 -

has failed to explain in his brief how he preserved the issue. Pa.R.A.P. 2119(e) (where issue must be preserved, argument in brief must demonstrate preservation of issue); **Commonwealth v. Colon**, 31 A.3d 309, 317 (Pa. Super. 2011) ("appellate courts will not overlook defense counsel's failure to object").

We note that James' claims of trial court bias might be better characterized as claims of ineffectiveness of counsel insofar as James argues that counsel failed to properly present the facts of James' case to the court. Indeed, James initially raised three ineffectiveness claims in his Rule 1925(b) statement before explicitly abandoning the issues in his brief. **See** Appellant's Brief, at ii. We reiterate that "claims of ineffective assistance of trial counsel may not be raised on direct appeal but, rather, must be litigated on collateral review under the [PCRA]." **Commonwealth v. Williams**, 959 A.2d 1252, 1250 (Pa. Super. 2008).

In his third challenge, James alleges that the trial court erred by trying the offense of unlawful taking of a motor vehicle in Pennsylvania when the crime occurred in New Jersey. Appellant's Brief, at 24-25. James argues that the trial court lacked subject matter jurisdiction over that charge because the crime has no nexus to Pennsylvania or the Philadelphia Court of Common Pleas. **Id.** James also argues that, by charging James with unlawful taking of a motor vehicle, Pennsylvania is depriving New Jersey of its ability to prosecute James. **Id.** at 27-28.

A person may be convicted of an offense under the law of this Commonwealth if his or her conduct, which is an element of the offense, occurs within this Commonwealth.  18 Pa.C.S.A. § 102(a)(1).  "For a county to exercise jurisdiction over a criminal case, an overt act involved in the crime must have occurred within that county." ***Commonwealth v. Passmore***, 857 A.2d 697, 709 (Pa. Super. 2004).  Exercising unlawful control over the stolen vehicle constitutes an element of theft of an automobile by unlawful taking. 18 Pa.C.S.A. § 3921(a); ***Commonwealth v. Adams***, 388 A.2d 1046, 1047 (Pa. 1978) (exercising unlawful control over automobile alone may constitute unlawful taking without evidence that defendant originally misappropriated property).

Here, James exercised unlawful control over Glasgo's Nissan Maxima, ***see*** 18 Pa.C.S.A. § 3921(a), by driving it to Philadelphia to commit two robberies, at least one of which caused James to exit and then reenter and seize Glasgo's Maxima and attempt to drive it away before it stalled.  N.T. Jury Trial, 11/8/16, at 39-46, 82-92; ***Adams***, ***supra***.  Thus, the Court of Common Pleas of Philadelphia County had jurisdiction to try James for the unlawful taking of Glasgo's vehicle.  18 Pa.C.S.A. § 102(a)(1); ***see Passmore***, ***supra*** (defendant's kidnapping of victim in Pennsylvania constituted element of second-degree homicide, allowing Pennsylvania to try defendant for homicide that occurred in Maryland).  Contrary to James' suggestion, there was no issue of comity depriving Pennsylvania of its ability to try James as New Jersey never tried James for any of the acts relating to these incidents.

***Commonwealth v. Ramirez***, 533 A.2d 116, 119 (Pa. Super. 1987) (pending

prosecution in another jurisdiction does not bar Pennsylvania trial unless other

prosecution already resulted in conviction or acquittal).

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/23/21