J-S22045-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KHALIF OMAR DUNCAN, | : | |
| | : | |
| Appellant | : | No.  1318 MDA 2015 |

Appeal from the Judgment of Sentence June 15, 2015,
in the Court of Common Pleas of Dauphin County,
Criminal Division, at No(s): CP-22-CR-0005600-2013

BEFORE:   MUNDY, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED APRIL 13, 2016**

Khalif Omar Duncan (Appellant) appeals from the judgment of sentence entered following his convictions for possession of a controlled substance with intent to deliver (PWID) and possession of drug paraphernalia.  Upon review, we affirm.

Appellant was arrested for the above offenses on October 30, 2013, based upon events which culminated in his parole officer's finding three glass vials of PCP during a search of Appellant's residence.[1]  On January 17, 2014, Appellant filed a motion to suppress evidence, which the trial court denied following a hearing.  Appellant was found guilty of both offenses after a bench trial held on April 9, 2015.  He was sentenced to an aggregate term of 54 months to ten years of incarceration on June 15, 2015.  On June 24,

---

[1] Appellant was also cited for driving with a suspended license and a turn signal violation, which are not at issue herein.

*Retired Senior Judge assigned to the Superior Court.

2015, Appellant filed post-sentence motions, which the trial court denied the next day. This appeal followed.

On appeal, Appellant presents the following issues for our consideration, which we have reorganized for ease of disposition:

I.    Whether the trial court erred in denying Appellant's suppression motion where law enforcement conducted an unlawful property search of Appellant's home without reasonable suspicion in contravention of the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution?

II.   Whether the trial court erred in denying Appellant's post-sentence motion where his convictions were against the weight of the evidence so as to shock one's sense of justice as Appellant was not shown to have engaged in acts which constitute the offenses of which he was convicted?

III.  Whether the trial court erred in denying Appellant's post-sentence motion where his sentence is excessive and unreasonable and constitutes too severe a punishment in light of the gravity of the offense, what is needed to protect the public, and Appellant's rehabilitative needs?

Appellant's Brief at 7 (unnecessary capitalization and suggested answers omitted).

In his first issue, Appellant argues that the trial court erred in denying his suppression motion because his parole officer, Agent Michael Welsh, lacked reasonable suspicion to search his residence. *Id.* at 16. In support of his argument, Appellant contends that he received a citation for driving with a suspended license prior to the search, "Agent Welsh's knowledge that Appellant was driving under suspension was a complete parole violation, and

there was nothing Agent Welsh could conceivably have discovered in Appellant's residence which would be relevant to proving or investigating" that violation. *Id.* at 16-17. Appellant further argues that "there were no objective circumstances to provide Agent Welsh with reasonable suspicion to search [the] residence" and that the search "constituted an illegal fishing expedition." *Id.* at 17.

We address Appellant's first issue mindful of the following.

> Our analysis of this question begins with the presumption that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. If the trial court denies the motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. In so doing, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Berkheimer,* 57 A.3d 171, 177 (Pa. Super. 2012) (en banc) (citations, quotations, and alteration omitted). Moreover, we may only consider the evidence presented at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1085-87 (Pa. 2013).

Pursuant to Pennsylvania law, if an individual is on probation or parole, then "[a] property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or

other evidence of violations of the conditions of supervision." 61 Pa.C.S. § 6153(d)(2).

> The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:
>
> > (i) The observations of agents.
> >
> > (ii) Information provided by others.
> >
> > (iii) The activities of the offender.
> >
> > (iv) Information provided by the offender.
> >
> > (v) The experience of agents with the offender.
> >
> > (vi) The experience of agents in similar circumstances.
> >
> > (vii) The prior criminal and supervisory history of the offender.
> >
> > (viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S. § 6153(d)(6).

> As this Court has stated:
>
> > Because the very assumption of the institution of parole is that the parolee is more likely than the ordinary citizen to violate the law, the agents need not have probable cause to search a parolee or his property; instead, reasonable suspicion is sufficient to authorize a search. Essentially, parolees agree to endure warrantless searches based only on reasonable suspicion in exchange for their early release from prison.
> >
> > The search of a parolee is only reasonable, even where the parolee has signed a waiver ..., where the totality of the

circumstances demonstrate that (1) the parole officer had reasonable suspicion to believe that the parolee committed a parole violation; and (2) the search was reasonably related to the duty of the parole officer.

The determination of whether reasonable suspicion exists is to be considered in light of the totality of the circumstances.

*Commonwealth v. Colon*, 31 A.3d 309, 315 (Pa. Super. 2011) (citation omitted).

The trial court provided the following accurate summary of the pertinent testimony elicited at the suppression hearing:

Michael Welsh, a parole agent with the [Pennsylvania] Board of Probation and Parole, was supervising [Appellant] at the time of his arrest. Agent Welsh testified that he had been supervising [Appellant] since May of 2013, that [Appellant] had a curfew of midnight, and had to abide by … conditions including no guns, no drugs, no alcohol, and no criminal offenses. [Appellant] was also responsible for paying a supervision fee, attending classes, therapy, and any other group that Agent W[e]lsh saw fit.

On the Saturday night before Halloween, 2013, Agent Welsh heard a radio transmission involving a shooting incident that involved [Appellant]. When Agent Welsh followed up on the incident, he placed a call to Sergeant Doug Wealand, who told him that [Appellant] had been shot in the hip while leaving a nightclub that was known to have gun violence and drug activity. Agent Welsh testified that part of the parole conditions required [Appellant] to report any change in status whether it be medical, educational, etc… or whether he has had police contact. Agent Welsh found it very suspicious that he was not contacted by [Appellant] after the shooting, especially since the two of them had a very open line of communication. Agent Welsh reported the shooting information to his immediate supervisor, Agent Talasky, told him that he suspected that the gunshot wound was self-inflicted, and that [Appellant] had been admitted and [was going to be] released from the Harrisburg Hospital. [Agent

Welsh opined that the manner in which Appellant was shot appeared consistent with a person sticking a gun in his waistband, accidentally discharging into the hip.] Agent Welsh decided to initiate contact with [Appellant], and Agent Talasky approved the contact, and also approved checking [Appellant's] residence for any evidence of parole violations, whether it be alcohol, narcotics, or fugitives.

Agent Welsh attempted a field contact at [Appellant's] home. He did not answer the door. Subsequently, on October 30th, while assigned to the Street Crimes Unit with Officer Hammer, Agent Welsh asked Officer Hammer to stop at [Appellant's] residence, as Agent Welsh had authorization to conduct a search of the residence to check for parole violations. As they pulled up to the residence, Agent Welsh noticed a silver Grand Marquis[], which he knew was a car normally driven by [Appellant], pulling away from the house. At that point, Officer Hammer radioed information about [Appellant's] vehicle. Officer Darrin Bates spotted the vehicle and followed behind. When [Appellant] failed to use a traffic signal, Officer Bates pulled him over. The officer discovered that [Appellant] had a suspended driver's license, which meant the vehicle had to be towed. Officer Bates testified that he told [Appellant] he was free to go and that a citation would be arriving in the mail. Within seconds, Officer Hammer and Agent Welsh arrived and took [Appellant] back to his residence while Officer Bates waited on the towing company.

Before returning to [Appellant's] residence, Agent Welsh asked [Appellant] what was going on, patted him down for weapons, and inquired about the "large knot" he felt around his waist. It was bandaging, and [Appellant] told Agent Welsh that he had been shot. [Appellant] was short on details, and appeared nervous. At some point during the conversation, Agent Welsh told [Appellant] that he wanted to search his residence. Agent Welsh testified that [Appellant] told him he was fine with that and had nothing to hide. On the way to the residence, Agent Welsh smelled an odor of what he knew to be PCP, as he had a lot of exposure to it in his years as an agent. They arrived at the house and Agent Welsh unlocked the front door. As soon as he walked in, he was hit with an overwhelming odor of PCP. At that point, Agent Welsh asked Officer Hammer to stand with [Appellant] while he searched the home. Agent

Welsh encountered two children (between the ages of 8 and 12) watching television in [Appellant's] bedroom; he requested they wait with Officer Hammer. Agent Welsh followed the smell of PCP and found three vials underneath a night stand in the bedroom. Officer Hammer read [Appellant] his **Miranda**[2] rights. Afterwards, the officer asked if there was anything else in the residence they should know about [and if he minded if they took a look]. Appellant said no, admitted the PCP was his, allowed a further search of the residence, and told the officer about another cup of PCP that was on top of a shelf.

[Appellant] testified at the suppression hearing. When asked if he gave consent to his residence being searched, he said he did not. When asked why he would not consent to the search[], he replied that he "knew […] drugs were there," that it was a violation of his supervision, and he knew he could be charged criminally.

Trial Court Opinion (TCO), 12/7/2015, at 2-4 (citations and footnote omitted).

Based on the totality of the circumstances, including a consideration of the factors set forth in 61 Pa.C.S. § 6153(d)(6), we agree with the trial court that Agent Welsh had reasonable suspicion to believe that Appellant had violated his parole and that Appellant's residence "contain[ed] contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S. § 6153(d)(2). Therefore, Agent Welsh was permitted to search that location. **See Commonwealth v. Koehler**, 914 A.2d 427 (Pa. Super. 2006) (holding warrantless search of parolee's residence permitted where parole agent had reasonable suspicion to believe residence contained

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

evidence of violations of parole conditions). Accordingly, we hold that the trial court did not err in denying Appellant's motion to suppress.

Appellant next challenges the weight of the evidence to support his convictions. Appellant argues that he possessed the PCP for personal use and cites evidence to support that conclusion. Appellant's Brief at 19.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

>> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (emphasis in original; citations and some quotation marks omitted).

In its opinion issued pursuant to Pa.R.A.P. 1925(a), the trial court concluded that

[a] review of the record[3] in this case reveals that, while there is a slight conflict in the testimony presented, such discrepancy is not sufficient to render the jury [*sic*] verdict so contrary to the evidence as to shock one's sense of justice. There was more than ample evidence of record to support the fact-finder's guilty verdict.

TCO, 12/7/2015, at 10 (citations omitted). Appellant has failed to establish that the trial court abused its discretion in reaching its conclusion. Rather,

---

[3] The certified record does not contain the transcript from the bench trial held in this matter; however, its absence does not impact our disposition of this issue.

- 9 -

Appellant's argument merely amounts to a challenge to the weight and credibility determinations made by the fact-finder. However, as explained by the trial court, "it is solely within the fact-finder's province to assess weight and credibility of the evidence." TCO, 12/7/2015, at 11 (citing *Commonwealth v. Rabold*, 920 A.2d 857, 860 (Pa. Super. 2007) ("The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. As an appellate court, we cannot substitute our judgment for that of the finder of fact." (citation omitted)). Thus, he is not entitled to relief on his weight-of-the-evidence claim.

In his third issue, Appellant challenges the discretionary aspects of his sentence. An appellant who presents such a challenge must invoke this Court's jurisdiction by satisfying a four-part test.

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006)).

The record reflects that Appellant timely filed a notice of appeal[4] and preserved this issue by including it in his post-sentence motion. Appellant's brief also contains a statement pursuant to Pa.R.A.P. 2119(f). Thus, we now consider whether Appellant has raised a substantial question worthy of appellate review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Griffin*, 65 A.3d at 935 (citation and quotation marks omitted).

Appellant provides the following in his 2119(f) statement:

> Appellant respectfully submits that his sentence was excessive and unreasonable where was [*sic*] working productively prior to his incarceration. He acknowledged that he has a drug problem and needs to rehabilitate himself and make better choices.

_____

[4] Appellant was required to file his notice of appeal within thirty days following entry of the trial court's order denying Appellant's timely post-sentence motions, which occurred on June 25, 2015. *See* Pa.R.Crim.P. 720(A)(2)(a) ("If the defendant files a timely post-sentence motion, the notice of appeal shall be filed[] within 30 days of the entry of the order deciding the motion[.]"). That date, July 25, 2015, was a Saturday; thus, Appellant filed timely his notice of appeal on the following Monday, July 27, 2015. 1 Pa.C.S. § 1908 (excluding weekends and holidays from the computation of time when the last day of the time period falls on a weekend or holiday).

Appellant had a long history of drug use that has led to his incarceration in a state penitentiary, and has lost two years of street time on the state sentence for drug-induced behavior.

Appellant's Brief at 13-14 (citations omitted).

Appellant's statement relates to the court's consideration of mitigating factors, namely, Appellant's work history, his drug problem, and his acknowledgement of that problem and the need to address it. It is unclear, however, whether he contends that, in sentencing him, the court failed to consider those factors altogether or failed to consider them adequately. Nevertheless, our review of the sentencing transcript reveals the following:

> [Appellant's Counsel]: [Appellant] is 28 years old. He was working as a barber prior to being arrested. As you can see from the [presentence investigation report (PSI)], there's a long history of drug use that kind of obviously led to some state prison time as well. He has two years of street time that he will probably lose from that state sentence most recent and he had three years left on the actual sentence itself.
>
> ***
>
> [Appellant]: Yes. Your Honor, I do have a recent prior drug history, and I do admit that, you know, that I need help. At the same time, as you know, rehabilitation to work on myself and better thinking and judgment and better decision making that's about -- that's it Your Honor.

N.T., 6/15/2015, at 4-5. Based on the foregoing,[5] we interpret Appellant's argument to be that the court failed to consider mitigating factors

---

[5] As indicated by Appellant's counsel at the sentencing hearing, the court also had the benefit of a PSI. "Where the sentencing court had the benefit of a [PSI], we can assume the sentencing court 'was aware of relevant

- 12 -

adequately. "[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." **Commonwealth v. Disalvo**, 70 A.3d 900, 903 (Pa. Super. 2013) (quoting **Commonwealth v. Downing**, 990 A.2d 788, 794 (Pa. Super. 2010)). Appellant fails to convince us that such a claim raises a substantial question in this case. Thus, Appellant is not entitled to relief on his discretionary-aspects-of-sentencing claim.

For the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2016

---

information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.'" **Griffin**, 65 A.3d at 937 (quoting **Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988)).