J-A18038-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOEL D. CRAFT | : | |
| | : | |
| Appellant | : | No. 62 WDA 2017 |

Appeal from the Judgment of Sentence December 9, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0004464-2016

BEFORE:   BOWES, LAZARUS and OTT, JJ.

MEMORANDUM BY OTT, J.:                    FILED DECEMBER 08, 2017

Joel D. Craft appeals from the judgment of sentence imposed on December 9, 2016, in the Court of Common Pleas of Allegheny County. Craft was found guilty in a non-jury trial of two counts of aggravated assault, two counts of recklessly endangering another person (REAP), and resisting arrest.[1] The trial court sentenced Craft to five years' probation.[2] Craft challenges the sufficiency of the evidence to sustain his convictions, and claims the trial court improperly questioned a witness. See Craft's Brief at 5. Based upon the following, we affirm.

The trial court summarized the evidence presented at trial, as follows:

_____

[1] 18 Pa.C.S. §§ 2702(a)(6), 2705, and 5104.

[2] The court's sentence was imposed on one count of aggravated assault. The court imposed no further penalty on the remaining charges.

Saturday, April 6th, 2016, brought together a group of law enforcement officers. The goal was to serve family division warrants. One of those warrants was for Joel Craft. They had an address – 4737 Maripoe Street, Apartment #5, in the Oakland section of the City of Pittsburgh. Around 10:45 in the morning, the officers were able to ascertain that Mr. Craft's place was a basement apartment. They descended the steps and began their knocking and announcing campaign. They did not hear any response. The one closest to the door tried to open the steel door. Surprisingly, there was no resistance. It opened. Sheriffs' deputy [Randy] Grossman [who was in uniform] was first to cross the threshold. Det[ective Vincent] Longo [who was wearing a "raid" vest with "Sheriff" wording] was right next to him. It was very dark. The only real light was that beaming from the front door just being pushed opened. What [Deputy] Grossman saw was a gun being pointed at him by Mr. Craft. "Drop the gun", "Drop the gun", commands rained down. Seconds felt like minutes. The gun was placed on a nearby space heater by Mr. Craft as he began to take a position of getting on the ground. He slowly got on his knees. Officers then finished the task of getting him into a prone position. Craft was then handcuffed.

Trial Court Opinion, 3/29/2017, at 1–2.

On December 9, 2016, the trial judge found Craft guilty as stated above, and immediately sentenced him. On January 5, 2017, Craft filed an untimely post-sentence motion and a petition to file post-sentence motion nunc pro tunc. Thereafter, on January 9, 2017, Craft filed a timely notice of appeal. On February 3, 2017, the trial court denied the request for nunc pro tunc relief. On March 15, 2017, Craft timely complied with the order of the trial court to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

We first address Craft's sufficiency challenges. Our standard of review is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Mucci, 143 A.3d 399, 408–409 (Pa. Super. 2016).

Craft claims the evidence was insufficient to sustain his convictions for aggravated assault of a police officer (two counts, Deputy Grossman and Detective Longo) and recklessly endangering another person (two counts, Deputy Grossman and Detective Longo), and resisting arrest. We address his convictions and related arguments sequentially.

Section 2702(a)(6) of the Criminal Code provides that "[a] person is guilty of aggravated assault if he: … (6) attempts by physical menace to put any of the officers, agents, employees or other persons enumerated in subsection (c), while in the performance of duty, in fear of imminent serious

bodily injury[.]" 18 Pa.C.S. § 2702(a)(6). Detective Vincent Longo and Deputy Randy Grossman, both of the Allegheny County Sheriff's Department, fall within 18 Pa.C.S. § 2702(c). See 18 Pa.C.S. § 2702(c)(1), (7). Furthermore, "serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

Craft argues the evidence was insufficient to convict him of aggravated assault "because he lacked the requisite intent to place officers in fear of serious bodily injury since he believed he was being burglarized and lowered his firearm upon realizing the men were police officers." Craft's Brief at 20. Craft's argument warrants no relief.

The act of pointing a gun at another person can constitute an attempt by physical menace to put another in fear of imminent serious bodily injury. See Commonwealth v. Little, 614 A.2d 1146, 1152 (Pa. Super. 1992) (footnote omitted) (finding Commonwealth established simple assault by physical menace where appellant came out of house brandishing shotgun and threatening deputies). See also Sheppard, supra, 837 A.2d at 556 (appellant guilty of Section 2702(a)(6) aggravated assault where, while officer did not announce herself before entering kitchen looking for intruder, she was in full uniform and appellant stood directly in front of the officer, pointing his

gun at her for a length of time sufficient for the officer to draw her own weapon, demand that he disarm himself, and radio for backup).

Here, the Commonwealth's evidence showed that on April 2, 2016, at 10:45 a.m.,[3] Detective Longo, who was wearing a "raid" vest that was clearly marked "Sheriff" and displayed a badge,[4] and Deputy Grossman, who was in full uniform,[5] along with four or five plainclothes officers and another uniformed deputy,[6] went to Craft's apartment building to serve him with an arrest warrant.[7] The officers determined Craft was living in a basement apartment.[8]

Cement stairs led below ground to the exterior entrance of Craft's apartment, and "it was very tight quarters to get to [Craft's] front door."[9] The officers knocked on the door and windows, trying to get someone from the residence to come to the front door.[10] The officers heard movement in the

_____

[3] N.T., 12/6/2016, at 20.

[4] Id. at 12.

[5] Id. at 31.

[6] Id. at 13.

[7] Id. at 27.

[8] Id. at 13.

[9] Id. at 14. See also id. at 34.

[10] Id.

apartment, continued knocking on the door and windows, and announced that they were police and that they had a warrant.[11]  Deputy Grossman testified that the police knocking and announcing their presence were "loud ... because we want everybody to know in the neighborhood that we are there[.]"[12] Deputy Grossman then tried the front door handle, and the door popped open.[13]  The door flung open quickly, and Detective Grossman saw Craft handling a firearm and pointing it in his direction.[14]

Deputy Grossman yelled "gun" to alert the other detectives and deputies, and drew his own gun.[15]  Detective Longo, who was standing to the right side of the door in a "tactical" position, pressed his shoulder against Deputy Grossman so that he could get a vantage point to see into the apartment.  He then also saw Craft holding the gun at chest level, pointing slightly to the side.[16]

_____

[11] Id.

[12] Id. at 43.

[13] Id. at 14, 34.

[14] Id. at 14–15, 34–35.

[15] Id. at 35.

[16] Id. at 15.

Deputy Grossman repeatedly ordered Craft to drop the gun, and Detective Longo also ordered Craft to drop it.[17] Deputy Grossman also ordered Craft to the ground.[18] Detective Longo testified, "I think anybody with a firearm pointed in their direction is going to be scared. It was very touch and go." He further stated both he and Deputy Grossman both had firearms pointed at Craft "and [Craft] had a firearm ready to go."[19] Deputy Grossman likewise testified that the gun pointed in his general direction "puts fear in you."[20]

Three to four seconds elapsed before Craft dropped the gun.[21] Craft did not get to the ground.[22] Craft got down on his knees still within reach of the gun.[23] Deputy Grossman then grabbed and wrapped his arms around Craft,

_____

[17] Id. at 16.

[18] Id. at 36.

[19] Id. at 19.

[20] Id. at 37.

[21] Id. at 24, 36.

[22] Id. at 16.

[23] Id. at 36.

pushed him to the ground, and handcuffed him.[24] The gun was identified as a 9 millimeter Ruger, loaded and with a round in the chamber.[25]

Craft testified on his own behalf. He stated he was asleep in his apartment, and got out of bed when he heard his lock being picked and the door knob being jiggled.[26] Craft believed there were burglars or heroin addicts at the door, and grabbed his pistol.[27] He put a bullet in the chamber, went to the door, opened it, and saw badges.[28] He testified the officers told him drop the gun and get down on the ground, and repeated those commands.[29] He put the gun down on the space heater and started to get down on his knees. He did not drop the gun or throw the gun because he considered that to be dangerous.[30]

Craft, in suggesting that his story that he thought he was being burglarized was more believable than the Commonwealth's evidence, ignores our standard of review, which requires that we view the evidence in the light

_____

[24] Id.

[25] Id. at 17–18.

[26] Id. at 53.

[27] Id. at 54.

[28] Id. at 55.

[29] Id. at 56.

[30] Id.

most favorable to the Commonwealth as verdict winner, along with all reasonable inferences. In addition, Craft ignores well settled law that the trial court, as fact finder, passes on the credibility of witnesses and is free to believe all, part or none of the evidence.

Here, the trial court, as fact finder, was not obliged to credit Craft's testimony he believed the police officers at his door were burglars. The trial court could consider Deputy Grossman's testimony that police outside Craft's apartment knocking and announcing their presence loud enough for everybody in the neighborhood to know the officers were there. The trial court could consider the officers' testimony that when Craft's front door opened, Deputy Grossman faced Craft, and Deputy Grossman was dressed in full uniform. The trial court could also consider the officers' testimony that they repeatedly commanded Craft to put the gun down before he complied with their order.

The Commonwealth relies on Sheppard, supra, and we agree that Sheppard is germane to this case. In Sheppard,

> [o]n March 13, 2002, Poncho Jackson ("Jackson") telephoned the Philadelphia police and reported that there were intruders in his residence. Officer Margurita Wilcox arrived at approximately 9:15 p.m., in full uniform, and met Jackson in front of the house. Jackson unlocked the door, led the officer inside, and informed her that the intruders were in the kitchen area. Officer Wilcox proceeded to the kitchen, where she encountered Sheppard. According to Officer Wilcox, when she opened the kitchen door Sheppard "turned around with his gun facing me." The officer drew her weapon and instructed Sheppard to drop his gun, which he failed to do. Officer Wilcox radioed for backup and moments later Officer Charles Lloyd entered the kitchen through the back door.

Sheppard dropped his weapon and was taken into custody without incident.

Id., 837 A.2d at 556 (footnotes and record citation omitted). This Court, in rejecting Sheppard's sufficiency claim, explained:

> Officer Wilcox admitted that she did not announce "police" before entering the kitchen, and that, in her opinion, Sheppard was not expecting to see the police come through the kitchen door. However, Officer Wilcox offered uncontradicted testimony that she was in full uniform during the encounter. Sheppard stood directly in front of Officer Wilcox, pointing his gun at her for a length of time sufficient for the officer to draw her own weapon, demand that Sheppard disarm himself, and radio for backup. We fail to see how Sheppard could not have known that Officer Wilcox was a police officer under these circumstances. We agree with the Commonwealth that Sheppard is really challenging the weight to be accorded Officer Wilcox's testimony, a determination that is not reviewable on appeal. Viewing the evidence and all reasonable inferences therefrom in a light most favorable to the Commonwealth, we conclude that the evidence was sufficient to support Sheppard's conviction under § 2702(a)(6).

Id. at 558 (case citation and record citations omitted).

Based upon our examination of the evidence, and applying our standard of review, we conclude the evidence presented by the Commonwealth in this case was sufficient for the trial court to find Craft guilty of aggravated assault pursuant to Section 2702(a)(6). See Sheppard, supra. As such, no relief is due on Craft's sufficiency claim for aggravated assault.

Nor do we find merit in Craft's argument that the evidence was insufficient to sustain his conviction for REAP. To prove REAP, the Commonwealth must show the accused "recklessly engage[d] in conduct

which place[d] or may [have] place[d] another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705.

Craft argues the evidence was insufficient to convict him of REAP as he believed he was defending his home and did not disregard any risk of harm to police as he lowered his firearm and went to the ground upon being commanded to do so. Craft's argument, however, is unavailing because the same evidence that supports Craft's conviction for aggravated assault pursuant to Section 2702(a)(6) supports his conviction for REAP. See Commonwealth v. Reynolds, 835 A.2d 720, 729 (Pa. Super. 2003) (act of merely pointing a loaded gun at another is sufficient to support a conviction for REAP). Accordingly, we reject Craft's sufficiency claim as to his REAP conviction.

Lastly, Craft challenges his conviction for resisting arrest, contending that "he put his firearm down as soon as he realized police officers were at his door and complied with all commands, never requiring the use of force against him." Craft's Brief at 27. Craft argues that "if [he] wanted to resist, he would have held his firearm up longer than a couple of seconds." Id. at 28.

A defendant may be convicted of resisting arrest if he, "with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, … creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104.

"The intent of this section is to confine the offense to forcible resistance that involves some substantial danger to the person." Commonwealth v. Miller, 475 A.2d 145, 146 (Pa. Super. 1984) (internal quotations and citation omitted). "The statute does not require serious bodily injury[, n]or does it require actual injury to the arresting officer." Commonwealth v. Lyons, 555 A.2d 920, 925 (Pa. Super. 1989). "Rather, sufficient resistance is established if the arrestee's actions created a substantial risk of bodily injury to the arresting officer." Id. "Moreover, the statute includes the disjunctive phrase 'or employs means justifying or requiring substantial force to overcome resistance.'" Id.

Here, again, Craft's sufficiency claim disregards our standard of review, and the court's credibility findings. The trial court, in finding Craft guilty of resisting arrest, stated "I believe that he knew and he didn't comply quickly." N.T., 12/9/2016, at 71. In its opinion, the trial judge explained: "Craft's action of pointing a gun at a police officer in the course of serving an arrest warrant is conduct which creates a substantial risk of bodily injury to those law enforcement officials." Trial Court Opinion, 3/29/2017, at 4.

We defer to the trial court's credibility determination, and we agree with the trial court's conclusion that the evidence presented by the Commonwealth satisfied the elements of resisting arrest. See Lyons, supra at 925 (defendant's struggle with two deputies in the middle of a frigid stream with a rocky uneven bed was sufficient to establish Section 5104 requirement that

arrestee's actions create a substantial risk of bodily injury to the arresting officer). Accordingly, we reject Craft's sufficiency challenge to his resisting arrest conviction.

Finally, Craft argues the trial court abused its discretion "by acting as a second prosecutor during its protracted questioning of [Deputy] Grossman and through its biased comments indicating what issue it was not convinced of, prejudicing Mr. Craft and denying him due process." Craft's Brief at 11.

The trial court and the Commonwealth take the position Craft has waived this claim by failing to object to the trial court's questioning or comments during examination of Deputy Grossman. See Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Craft, however, contends that pursuant to Commonwealth v. Hammer, 494 A.2d 1054 (Pa. 1985), this Court should not find waiver. See Craft's Reply Brief.

In Commonwealth v. Colon, 31 A.3d 309 (Pa. Super. 2011), this Court addressed Hammer, stating:

> We agree with Appellant that, in Hammer, our Supreme Court concluded that justice would not be served by strictly enforcing the waiver doctrine where the record revealed that objection by counsel would be meaningless and, in fact, intensify judicial animosity. Therefore, in Hammer, our Supreme Court overlooked defense counsel's failure to object to the trial judge's questioning of witnesses and addressed the substantive issue of whether such questioning constituted reversible error.
>
> Subsequently, however, in Commonwealth v. Grant, 572 Pa. 48, 813 A.2d 726 (2002), our Supreme Court specifically overruled Hammer, indicating that, generally, the appellate

courts will not overlook defense counsel's failure to object and, with regard thereto, an appellant may present claims of ineffective assistance of counsel in a PCRA petition. Indeed, recently, in Commonwealth v. Barnett, 2011 PA Super 147, 25 A.3d 371 (Pa. Super. 2011) (en banc), an en banc panel of this Court reaffirmed Grant's limitation on overlooking the waiver doctrine and held that, unless an appellant makes an express, knowing, and voluntary waiver of review pursuant to the PCRA, this Court will not engage in review of ineffective assistance of counsel claims on direct appeal.

Colon, 31 A.3d at 316-317.

Based on this Court's discussion in Colon, we cannot overlook trial counsel's failure to object to the questioning and comments of the trial judge to reach the merits of Craft's claim. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2017